# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DCK NORTH AMERICA, LLC,<br>Plaintiff, | )<br>)<br>) Civil Action No. 2:16-cv-00994<br>) |
| v. | ) Judge Mark R. Hornak |
| BURNS AND ROE SERVICES CORP.,<br>Defendant. | )<br>)<br>) |

## OPINION

**Mark R. Hornak, United States District Judge**

This is an arbitration dispute in which the parties are currently litigating the question of where they should be litigating—in court or in arbitration. The parties agreed in writing to arbitrate certain disputes. DCK now takes the position that the parties' arbitration provision does not apply to the claims in this case. For the following reasons, Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation (ECF No. 5) will be granted, this case will be stayed pending arbitration, and the parties will be ordered to arbitration in the manner they have agreed.

## I. BACKGROUND

Plaintiff DCK North America, LLC ("DCK") filed this action alleging, among other things, that Defendant Burns and Roe Services Corporation ("Burns and Roe") breached its contractual obligation to compensate DCK for over eight million dollars ($8,000,000) of unpaid costs incurred during joint construction projects in Guantanamo Bay, Cuba. ECF No. 1-2. Burns and Roe timely removed the case to this Court from the Court of Common Pleas of Allegheny County, Pennsylvania on the basis of diversity jurisdiction. ECF No. 1. Before the Court is Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation. ECF No. 5. The parties

fully briefed the issues and the Court heard oral argument on September 6, 2016. ECF Nos. 5, 6, 12, 13, 14, 20, 21, 22, 23.

The basic facts are undisputed. Eight years ago, DCK and Burns and Roe entered into a Joint Venture Agreement ("Agreement") to bid on construction project contracts for the United States Navy at Guantanamo Bay, Cuba, and to perform such contracts should they be awarded the bids.[1] ECF No. 1-2 at 4, 25. The Agreement essentially provides that DCK and Burns and Roe would front capital for the construction projects in equal amounts, with each holding a fifty percent interest, and likewise split any losses, costs, and liabilities down the middle. *Id.* If, for example, one joint venturer contributed capital or incurred losses in excess of fifty percent, the other joint venturer would then contribute additional capital to maintain the equal division of interests. *Id.*

DCK now alleges Burns and Roe shorted it over eight million dollars. *Id.* The shortfall, according to DCK, is based upon the parties' respective monetary contributions for labor, manpower, and equipment. *Id.* DCK filed suit, and Burns and Roe subsequently filed its Motion to Compel Arbitration (ECF No. 5).

The parties' Agreement contains the following arbitration provision:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof which cannot be resolved in accordance with the foregoing processes while in the course of performance of the Contract(s) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and any award tendered shall be final and binding upon the parties hereto, and judgment on the award rendered by the Arbitrator or Arbitrators may be entered in any Court having jurisdiction thereof. Any controversy or claim arising after the completion of the Construction Contract has been performed shall be resolved in a court of law.

---

[1] DCK Worldwide, LLC originally entered the Agreement before assigning it to the Plaintiff in this suit, DCK. ECF No. 1-2 at 25-26. Neither party disputes the validity of the assignment.

2

ECF No. 1-2 at 23-24. Neither party disputes the validity or the binding nature, generally speaking, of the arbitration provision.

The plain language of the Agreement appears to draw a line between disputes referable to arbitration and disputes that should be settled in court: Those disputes arising during performance of the Contract(s) shall be settled by arbitration and those arising after completion of performance of the Construction Contract shall be settled in court. But at oral argument on Burns and Roe's motion, it became quite clear that the parties have logical and reasonable positions in support of their differing views as to whether performance on the Contract(s) or the Construction Contract is complete. The parties agree that physical construction of the projects—the labor—is complete. The parties also agree, though, that they have not submitted a certificate of completion to the Navy, nor has the Navy approved all of their construction work. Thus, it would appear that the arbitrability of the parties' dispute thus turns on a mixed question of fact and contractual interpretation: whether performance of the Contract(s) and/or the Construction Contract was 'complete' when this dispute arose.

Upon closer scrutiny of the parties' Agreement, the line of demarcation as to contract completion is anything but sharp. The Agreement defines the term "Contract(s)" to include several of the Navy contracts the parties bid on as part of their joint venture. ECF No. 1-2 at 10. It does not, however, provide a definition for what the parties refer to as "the Construction Contract." Nor does it make clear what goalpost the parties contemplated for completion of performance on the Construction Contract such that arbitration would no longer be appropriate. The parties might, for example, have contemplated Contract completion as having occurred once the physical labor had been performed. They might have contemplated completion when the Navy approved the final buildouts. They might have contemplated completion when all

3

outstanding payments had been received. Or the parties might not have contemplated this question at all, at least in terms of providing any definitional language in the Contract documents.

At the Court's request, the parties submitted supplemental briefing addressing who must decide the question of when "after completion of the Construction Contract has been performed" occurs. ECF Nos. 22, 23. The parties also addressed whether a reference in the parties' arbitration provision to the Construction Industry Arbitration Rules of the American Arbitration Association (hereinafter "AAA Rules" or "Rules") incorporates those Rules into the provision, and, if so, whether such incorporation requires that the dispute be arbitrated in and of itself. *Id.* DCK contends this Court must decide the question presented here and argues (seemingly as a matter of law) that the parties' dispute is not arbitrable under the Agreement. ECF No. 23. Burns and Roe contends an arbitrator must determine the issue of Contract completion and, beyond that, the dispute in any event falls within the arbitration provision. ECF No. 22.

## II. **LEGAL STANDARD**

The United States Court of Appeals for the Third Circuit recently clarified the standards to be applied to motions to compel arbitration, identifying the circumstances under which district courts should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and those under which they should apply the summary judgment standard found in Rule 56. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-76 (3d Cir. 2013). With respect to the Rule 12(b)(6) standard, the court held:

> Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery. That approach appropriately fosters the [Federal Arbitration Act]'s interest in speedy dispute resolution. In those circumstances, the question to be answered becomes whether the assertions of the

4

complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for rejecting the affirmative defense.

*Id.* at 773-74 (internal citations and quotations omitted). With respect to the Rule 56 standard, the court held:

> [A] Rule 12(b)(6) standard is inappropriate when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard. Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

*Id.* at 774-75 (internal citations and quotations omitted).

The *Guidotti* court went on to explain that where the complaint and attached documents "establish on their face that [a plaintiff] agreed to be bound by the terms of . . . [a] provision for arbitration," that would "trigger[] a Rule 12(b)(6) standard." *Id.* at 776.

Here, DCK attached a copy of the parties' Agreement to its Complaint, and it critically relied upon that Agreement—which contains the arbitration provision—to state its claim. ECF No. 1-2 at 4-5, 23-24. Neither party—in pleadings, motions, responses, replies, supplemental briefings, or at oral argument—has disputed the validity or enforceability, generally speaking, of

5

the Agreement's arbitration provision. The Court therefore concludes that under *Guidotti*, a motion to dismiss standard is appropriate.[2]

Under the familiar Rule 12(b)(6) standard, Plaintiff's Complaint must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts must accept all "well-pleaded facts as true" and disregard any legal conclusions. *Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 677).

### III. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs written agreements to arbitrate in contracts involving interstate commerce.[3] 9 U.S.C. §§ 1 *et seq.*; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400-01 (1967). The FAA gave rise to a framework of federal substantive law governing courts' duty to honor agreements to arbitrate. *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Once a court determines a valid arbitration agreement exists, as is the case here, questions involving "[w]hether a suit or proceeding is referable to arbitration under an agreement to arbitrate . . . [and the] interpretation and construction of such arbitration agreements are . . . determined by reference to federal law." *Becker Autoradio*, 585 F.2d at 43 (internal citations and

---

[2] In addition or in the alternative, for the reasons set forth in this Opinion, the Court finds it unnecessary to proceed with discovery on any underlying factual questions. In light of the inextricably intertwined issues in this contract interpretation dispute—which, as noted below, federal law dictates must be resolved in favor of arbitration—addressing such factual questions here would not aid in the resolution of Burns and Roe's Motion.

[3] The Court applies the FAA based on the fact that the parties' Agreement involves funding from business in diverse states for construction contracts to be completed in Cuba. Neither party disputes the FAA's applicability, nor do the parties urge the Court to apply the law of any particular state. S*ee Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (applying the FAA because the parties do not dispute the contracts at issue involve commerce); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowek GmbH*, 585 F.2d 39, 43, n.9 (3d Cir. 1978) (applying federal law where the parties do not dispute the FAA's applicability).

quotations omitted).[4] And once a court is satisfied that the parties' dispute is arbitrable, it must stay a pending lawsuit on application of one of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement. *See* 9 U.S.C. §§ 3-4; *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181-82 (3d Cir. 2010); *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004).

Under the FAA framework, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). When a party makes a motion to compel arbitration, a court must therefore resolve two issues: (1) whether the parties are bound by a given arbitration clause, and (2) whether an arbitration clause in a concededly binding contract applies to the parties' dispute. *See, BG Group P.L.C. v. Republic of Argentina*, 134 S. Ct. 1198, 1206-07 (2014); *Granite Rock Co. v. International Borth. Of Teamsters*, 561 U.S. 287, 296 (2010); *Howsam*, 537 U.S. at 83; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 54-55 (3d Cir. 2001). In other words, where, as here, the parties "disagree whether a particular dispute is arbitrable," a court must assist them by "determining whether the parties have submitted a particular dispute to arbitration." *Opalinski v. Robert Half Intern., Inc.*, 761 F.3d 326, 331 (3d Cir. 2014) (citing *Howsam*, 537 U.S. at 83).

The parties' Agreement is, on its face, silent about who should decide questions of arbitrability. ECF No. 1-2 at 23-24. The question whether the parties have submitted a particular dispute to arbitration is presumptively for judicial determination unless the parties agreed to

---

[4] *See also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n.32 (1983) (finding federal law governs agreements to arbitrate that fall within the FAA's scope even where a federal court is sitting in diversity); *Century Indemnity Co.*, 584 F.3d at 524 (finding federal law governs agreements to arbitrate once a court determines there exists a valid agreement to arbitrate).

arbitrate it. *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007) (citing *Howsam*, 537 U.S. at 83-84). The presumption in favor judicial determination is quite strong: the parties must have "clearly and unmistakably provide[d] otherwise" in order to overcome it. *Id.* Silence or ambiguity on the question of who should decide arbitrability is typically construed in favor of judicial determination. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-46 (1995). Because not all questions are for judicial resolution, however, a court also looks to certain presumptions regarding who decides arbitrability when the parties' agreement is silent. *BG Group*, 134 S. Ct. at 1206-07. Courts presume the parties intended courts, not arbitrators, to decide questions such as whether the parties are bound by a given arbitration clause and whether an arbitration clause in a concededly binding contract applies to the parties' dispute. *Id.*; *see also Granite Rock*, 561 U.S. at 296; *Howsam*, 537 U.S. at 83; *Mitsubishi Motors*, 473 U.S. at 626; *Opalinski*, 761 F.3d at 331; *Medtronic*, 247 F.3d at 54-55. On the other hand, courts presume the parties intended an arbitrator to decide the meaning and application of procedural preconditions to arbitration. *BG Group*, 134 S. Ct. at 1206-07. Procedural preconditions to arbitration include issues such as waiver, delay, notice, laches, estoppel, and prerequisites such as time limits. *Id.* at 1207.

In support of its motion to compel, Burns and Roe asserts that an arbitrator should decide the question of arbitrability for two reasons. ECF No. 22 at 2. First, Burns and Roe argues the underlying factual question—whether the parties' dispute arose during contract performance—amounts to a procedural precondition to arbitration. ECF No. 22 at 4-5. Burns and Roe asserts the question here is of the time-limit variety, and thus, under *BG Group*, the arbitrator should resolve it. ECF No. 22 at 4-5. The cases dealing with time limit preconditions to arbitration, however, are distinguishable. In *BG Group*, for example, the provision at issue was a time

8

limitation on the parties' ability to request arbitration: it stated that a dispute "shall be submitted to international arbitration" on request of a party as long as "a period of eighteen months ha[d] elapsed" since the dispute was submitted to a local tribunal. 134 S. Ct. at 1207. The Supreme Court held such a provision was "purely procedural" because it "governs *when* the arbitration may begin, but not *whether* it may occur." *Id.* (emphasis added). The Court went on to analogize the provision in *BG Group* to procedural issues such as whether a party filed a notice of arbitration within the time limit provided by the arbitrator's rules. *Id.* at 1207-08. Such provisions, the Court concluded, would normally be interpreted by an arbitrator. *Id.* at 1208.

Likewise, in *Howsam*, the Supreme Court considered another time-limit provision which dealt with when, but not whether, arbitration may occur. The provision stated that no dispute "shall be eligible for submission to arbitration ... where six (6) years have elapsed from the occurrence or event giving rise to the ... dispute." 537 U.S. at 82. The Supreme Court concluded the time limit provision raised a procedural issue which was presumptively for the arbitrator to decide. *Id.* at 85. It reasoned that the rule operated similar to issues of waiver or delay. *Id.* The time limit provision, moreover, was one put in place by the arbitrator—not by the parties to the agreement—and so, the Court found, the arbitrator was the better presumptive adjudicator. *Id.* at 85-86.

Here, the question underling the parties' dispute—whether DCK's claim arose during performance of the contracts or after performance—is not an issue governing when arbitration may begin, as in *BG Group*, nor is it an arbitrator's rule or mechanism for raising a procedural question, as in *Howsam*. The question is also not one of waiver or delay, questions typically decided by the arbitrator.[5] DCK's claim is, the Court finds, more akin to those questions of arbitrability that courts presumptively decide, such as whether the parties are bound by a given

---

[5] Burns and Roe does not contend, for example, that DCK brought its claim too late.

9

arbitration clause or whether an arbitration clause covers the parties' dispute. *See, e.g., BG Group*, 134 S. Ct. at 1206-07; *Granite Rock*, 561 U.S. at 296; *Howsam*, 537 U.S. at 83; *Opalinski*, 761 F.3d at 331; *Medtronic*, 247 F.3d at 54-55.

Burns and Roe next contends an arbitrator should decide the question of arbitrability because the parties' made reference in their arbitration provision to the AAA Rules. Under the parties' arbitration provision, disputes which arise during performance of the contracts shall be settled by arbitration in accordance with the Rules, while those that arise after performance shall be settled in a court of law. ECF No. 1-2 at 23.

The Third Circuit has not explicitly decided the issue whether incorporation of the AAA Rules is sufficient to establish a clear and unmistakable intent of parties in a bilateral dispute to delegate to the arbitrator the question of arbitrability. Virtually every other circuit to have considered that issue, however, has concluded that incorporation of the Rules is sufficient to establish clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Chesapeake Appalachia, L.L.C. v. Scout Petroleum, L.L.C.*, 809 F.3d 746, 763-64 (3d Cir. 2016); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005). And although relatively few district courts in this Circuit have addressed the question, those that have addressed it seem to follow the same reasoning. *See Insurance Newsnet.com, Inc. v. Pardine*, No. 11-cv-286, 2011 WL 3423081, *3 (M.D. Pa. August 4, 2011) ("The prevailing rule across jurisdictions is that incorporation by reference of rules granting the arbitrator the authority to

decide questions of arbitrability—especially the [R]ules—is clear and unmistakable evidence that the parties agreed to submit arbitrability questions to the arbitrators."); *Way Services, Inc. v. Adecco North America, L.L.C.*, No. 06-cv-2109, 2007 WL 1775393, *4 (E.D. Pa. June 18, 2007) (noting the same). Burns and Roe urges this Court to follow suit. ECF No. 22 at 7.

Here, however—even assuming the parties successfully incorporated the AAA Rules into their arbitration provision[6]—the generally-accepted rule outlined above would not be dispositive. First, the parties' arbitration provision is distinguishable from those in *Insurance Newsnet.com*, *Way Services*, and those cases from other circuits where reference to Rules evidenced a clear and unmistakable intent to arbitrate the question of arbitrability. In each of those cases, the parties' arbitration provision was sweeping, referring all disputes—with few or no exceptions—to arbitration. In this case, a fair reading of the parties' contract makes it clear the parties only agreed to arbitrate under the Rules for disputes that arise during the course of performance of the contracts. ECF No. 1-2 at 23-24. The provision goes on to state that any disputes "arising after completion of the Construction Contract has been performed shall be resolved in a court of law." *Id.* Thus, even if incorporation of the Rules were successful, we would, at most, be back to our original question: what goalpost did the parties contemplate for completion of performance such that arbitration is appropriate?

In addition and in the alternative, even if incorporation of the AAA Rules were sufficient to subject all the parties' disputes to those Rules, the Court would then have to intuit, absent any clear contractual provision, whether the parties intended to incorporate the version of the Rules in circulation at the time of the Agreement or at some other time—such as at the time of the dispute or of a court's ruling on the issue. The Court notes that what appears to be the current

---

[6] The Court assumes for the purposes of argument—but does not decide—that the parties' reference to the AAA Rules was sufficient to incorporate those Rules into the agreement under any applicable state law.

11

version of the AAA Rules provides "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Rule R-9, available at http://www.adr.org. But the parties have provided no guidance on past versions of the Rules or their dates of adoption.

Because the parties' reference to the AAA Rules in their arbitration provision does not necessarily bring those Rules into play in this dispute, and because it is further ambiguous which version of the Rules the parties intended to reference and what those particular Rules reveal, the parties cannot be said to have clearly and unmistakably provided for an arbitrator, rather than a court, to decide the question of arbitrability. The Court must therefore decide the question. *See First Options*, 514 U.S. at 944-47; *Gay*, 511 F.3d at 387.

When interpreting and applying contractual arbitration provisions, federal substantive law reflects a strong presumption in favor of arbitration. *Medtronic*, 247 F.3d at 55. Federal courts liberally construe arbitration clauses—so much so that "any doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration." *Becker Autoradio*, 585 F.2d at 44; *see also AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986); *Medtronic*, 247 F.3d at 55. Although the plain language of a contract always controls, any ambiguities regarding the scope of arbitrable issues should be resolved in favor of arbitration. *See, e.g., CardioNet v. Cigna Health Corp.*, 751 F.3d 165, 172-73 (3d Cir. 2014); *see also Granite Rock* 561 U.S. at 298. In other words, the strong presumption in favor of arbitration applies "unless a court can state with positive assurance that [the] dispute was not meant to be arbitrated." *Becker Autoradio*, 585 F.2d at 44 (internal quotations omitted). The Supreme Court has held, therefore, that a motion to compel arbitration under a valid arbitration clause "should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech.*, 475 U.S. at 650.

In determining when the presumption in favor of arbitration applies, the Third Circuit has added an additional layer of analysis. Where "the arbitration provision is narrowly crafted, we cannot presume, as we might if it were drafted broadly, that the parties [] agreed to submit all disputes to arbitration." *Local 827, Intern. Broth. Of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc.*, 458 F.3d 305, 310 (3d Cir. 2006). In those cases, the strong presumption in favor of arbitrability does not apply. *Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO*, 982 F.2d 884, 888, n.5 (3d Cir. 1992). Narrow arbitration provisions are those that, for example, "expressly limit the range of arbitrable disputes to a single category or function, such as limiting the arbitrator's power to modifying a penalty where only disciplinary layoffs or discharges which violate the terms of [an agreement] are involved." *Id.* Broad arbitration provisions, on the other hand, are those which apply to "any dispute" arising out of an agreement. *Id.* Where the provision is broad, the presumption of arbitrability applies, and "only the most forceful evidence of a purpose to exclude a particular grievance from arbitration can prevail." *Id.* (citing *AT&T Tech.*, 475 U.S. at 650).

Here, the parties' arbitration clause is broad rather than narrow. It provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof which cannot be resolved in accordance with the foregoing processes while in the course of performance of the Contract(s) shall be settled by arbitration." ECF No. 1-2 at 23; *E.M. Diagnostic Systems, Inc. v. Local 169*, 812 F.2d 91, 92, 95 (3d Cir. 1987) (finding that an arbitration clause containing "[a]ny dispute arising out of a claimed violation of" the agreement was broad and entitled to the strong presumption of arbitrability); *Luken Steel Co. v. U.S.*

13

*Steelworkers of America*, 989 F.2d 668, 673 (1993) (finding that an arbitration clause containing "[s]hould any differences arise" was broad and entitled to the strong presumption of arbitrability). Although the parties' arbitration clause in this case limits arbitrable disputes to those that arise during performance, ECF No. 1-2 at 23-24, such limitation does not narrow the scope of the arbitration clause so much that the arbitrator's role is relegated to resolving a single discrete category or type of dispute. *Cf. Trap Rock*, 982 F.2d at 888, n.5. In light of the sophisticated nature of the parties in this case and the considerable ambiguity in the arbitration limitation itself (due to the parties' failure to demarcate with any certainty their goalpost for the end of performance), the Court is not persuaded that the clause is sufficiently narrow to avoid the strong presumption in favor of arbitration.

Because the parties' arbitration provision is facially unclear regarding what goalpost the parties' contemplated for completion of performance—whether it be once the physical labor had been performed, once the Navy approved the final buildouts, once all outstanding payments have been received, or some other benchmark—the provision is ambiguous. The court need not "strain to find [] ambiguity," *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 172 (3d Cir. 2006), because the ambiguity present here is considerably more boisterous than a "flicker of interpretive doubt." *Cf. PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 513 (3d Cir. 1990). The presumption of arbitrability, therefore, applies.

Applying the presumption, the parties' arbitration provision meets the standard for referral to arbitration: it is, without question, "susceptible of an interpretation that covers the asserted dispute." *AT&T Tech.*, 475 U.S. at 650. At oral argument, the parties conceded they have not submitted a certificate of completion to the Navy for their contracts, nor has the Navy approved all of the parties' construction work. Resolving all "doubts as to whether an arbitration

clause may be interpreted to cover the asserted dispute . . . in favor of arbitration," the Court cannot, in light of the Agreement's ambiguity regarding the completion of contract performance, "state with positive assurance that [the] dispute was not meant to be arbitrated." *Becker Autoradio*, 585 F.2d at 44 (internal quotations omitted); *see also AT&T Tech.*, 475 U.S. at 650.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation (ECF No. 5) will be granted. This case will be stayed and administratively closed pending arbitration, and the parties will be ordered to proceed forthwith to arbitration in the manner they have agreed. The stay may be lifted by this Court on its own Motion or for good cause shown. An appropriate Order will issue.

       /s/ Mark R. Hornak_____
      **Mark R. Hornak**
      **United States District Judge**

Dated: October 31, 2016
cc:    All counsel of record